UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
PIKEVILLE

| | | |
|---|---|---|
| MARY JOE BUNDY EVERAGE, | ) | |
| | ) | |
| Plaintiff, | ) | No. 7:18-CV-119-REW |
| | ) | |
| v. | ) | |
| | ) | |
| ABC TELEVISION NETWORK, INC., ET AL., | ) | OPINION AND ORDER |
| | ) | |
| Defendants. | ) | |

\*\*\* \*\*\* \*\*\* \*\*\*

Proceeding without an attorney, Mary Joe Bundy Everage accuses several major television networks of jointly installing "monitoring cameras and listening devices in [her] home and auto," and "controlling and monitoring [her] computer, cellphone, and radio." DE #1 (Complaint) at 3. Without providing details as to the number or placement of these devices, she avers that "[t]hese methods culminated in [her] being USED for profit By these television networks, the morning news of Fox Television, the morning news on ABC, and The 4th hour of NBC's Today Show involving Kathie Lee Gifford and Hota Kotb." *Id.* at 7. Everage does not offer a description of these programs' offending content, but she labels the networks as "little more than sex offenders and common criminals" and requests $50 million in damages from each defendant.[1] *Id.* at 4, 5. The Court previously granted Everage's request to proceed *in forma pauperis* (IFP) in this matter. DE #6. *See* 28 U.S.C. § 1915(a)(1).

Because Everage proceeds IFP, the Court preliminarily screens her Complaint and concludes that dismissal is appropriate under § 1915(e)(2)(B)(i). *See Benson v. O'Brien*, 179 F.3d

---

[1] Everage requests $25 million in compensatory damages and an additional $25 million in punitive damages "to warn these big shots who exploit the little people that the United States Constitution was written for the protection of the innocent and the average citizen." DE #1 at 10.

1014, 1016 (6th Cir. 1999) (limiting courts' screening power under § 1915(e)(2) to actions brought IFP). "A complaint is frivolous if it has no arguable basis in law or fact." *Hill v. Michigan*, 14 F. App'x 401, 403 (6th Cir. 2001) (citing *Neitzke v. Williams*, 109 S. Ct. 1827, 1831–32 (1989)). As used in § 1915(e)(2), the "term 'frivolous,' when applied to a complaint, embraces not only the inarguable legal conclusion, but also the fanciful factual allegation." *Neitzke*, 109 S. Ct. at 1832. Claims are properly deemed frivolous "if the facts alleged are irrational or wholly incredible, as when they are fanciful, fantastic or delusional." *Murph v. Stumbo*, 3:05-CV-509-H, 2005 WL 2245466, at *1 (W.D. Ky. Sept. 14, 2005); *accord Denton v. Hernandez*, 112 S. Ct. 1728, 1733 (1992) (noting that "a court may dismiss a claim as factually frivolous only if the facts alleged are clearly baseless" and encompass allegations that are "fanciful" and "fantastic[,]" collectively "ris[ing] to the level of the irrational or wholly incredible") (internal quotation marks and citation omitted). Even under the liberal pleading construction afforded to *pro se* litigants, *see Williams v. Curtin*, 631 F.3d 380, 383 (6th Cir. 2011), Everage's claim that multiple national television networks, with which she admits she has never had any personal connection or interaction (*see* DE #1 at 4), have been secretly monitoring her life and using it in programming is of this farfetched nature.

Collectively, the nonspecific factual assertions Everage lodges against the networks—indiscriminately claiming that "[t]he media put hidden cameras in [her] home . . . and the Defendants were involved"—describe a scenario that is fanciful and fantastic. *See* DE #1 at 4. Although Everage blames the networks for a litany of personal afflictions, her summary allegations lack concrete facts about Defendants' activities and provide only attenuated theories about alleged remote interference in her life. *See, e.g.*, *id.* at 7 ("I have changed mobile phone Numbers four times in the past year, having received 63 calls in a two week period of time. These networks are responsible either directly or indirectly by publishing my private information to the public."); *id.*

at 8 ("I was USED for material or their television shows and even the products I brought home from the store were immediately advertised on their commercials."). Notably, Everage provides no dates (except perhaps "several years" after a relocation from Tennessee in 1998), places, people, or details. She rails against the networks but then alleges exploitative conduct by the "Entertainment world, especially the music world in Nashville, Tennessee." DE #1 at 3. With no particulars on time, act, actor, or location, the Complaint cites a "hate crime," objects over unspecified privacy invasions, contends illegal wiretapping, and posits the existence of "two way television" employed by public broadcasters. *Id.* at 3, 8. From this fictional mosaic, Plaintiff endeavors a federal lawsuit; the Court rejects the effort as far afield and plainly subject to screening for frivolity. Everage's allegations "rise to the level of the irrational or wholly incredible[,]" and her Complaint is subject to § 1915(e)(2) dismissal. *See Denton*, 112 S. Ct. at 1733.

Accordingly, the Court **ORDERS** as follows:

1. The Court **DISMISSES** Everage's Complaint (DE #1) in its entirety, with prejudice.

2. The Court **STRIKES** this matter from its active docket.

3. A Judgment to this effect follows.

This the 29th day of November, 2018.

Signed By:
*Robert E. Wier* REW
United States District Judge